**UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO**

| | |
|---|---|
| IN RE:<br><br>    KDA PROPERTIES, LLC,<br>    EIN: 82-4821525<br>    Debtor. | Case No.: 21-14821 EEB<br><br>Chapter: 11 |

**MOTION TO APPROVE STIPULATION BETWEEN DEBTOR AND PANGEA MORTGAGE CAPITAL, INC. PURSUANT TO FED. R. BANKR. P. 9019(A)**

Debtor-in-possession, KDA Properties, LLC ("**Debtor**" or "**KDA**"), pursuant to FED. R. BANKR. P. 9019(a) and the Court's directive in its April 7, 2022 Order (Dkt. No. 119) hereby requests entry of an Order approving the Debtor's Stipulation with Pangea Mortgage Capital, Inc. ("**Pangea**") Resolving Pangea's Objection to Debtor's Amended Plan of Reorganization and Motion to Dismiss (the "**Stipulation**"). A copy of the Stipulation is attached as **Exhibit A**.

## I. BACKGROUND

1. On September 21, 2021, Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court, District of Colorado. Dkt. No. 1.

2. Since then, the Debtor has operated as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. Debtor is the owner of certain real estate located at 1612 Wazee Street, Denver Colorado 80202[1] (the "**Property**"), which operated as a boutique hotel in downtown Denver (*i.e.,* Nativ Hotel, including the bar and lounge) before being forced to shut down due to the global coronavirus-19 pandemic.

---

[1] The legal description of the Property is set forth below:

    All that certain real property situated in the County of Denver, State of Colorado, described as follows:
        LOTS 13 AND 14, BLOCK 20, EAST DENVER
        CITY AND COUNTY OF DENVER, STATE OF COLORADO
    Commonly known as: 1612 Wazee Street, Denver, Colorado, 80202

1

4. Pangea has a first position lien on the Property, and has filed a Proof of Claim in the amount of $8,066,712.23, upon which Pangea asserts interest continues to accrue at a rate of 24% per annum and in addition to attorney fees and costs (the "**Pangea Outstanding Obligation**").

5. Debtor filed its proposed plan of reorganization within the exclusivity period on December 20, 2021, as amended on January 10, 2022 (the "*Plan*"), at which time it also filed its Disclosure Statement. *See* Dkt. Nos. 71, 75, and 76. As set forth in both the Plan and Disclosure Statement, the Debtor intends to sell the Property by Auction (as defined therein and in the Auction Motion, defined below).

6. On January 6, 2022, Pangea filed a Motion to Dismiss Chapter 11 Bankruptcy for Cause Pursuant to 11 U.S.C. § 1112(b)(4) (the "**Motion to Dismiss**"). *See* Dkt. No. 73. Debtor obtained a 10-day extension of time to respond the Motion to Dismiss. Dkt. No. 86. On January 31, 2022, Debtor filed its objection to Pangea's Motion to Dismiss. *See* Dkt. No. 89.

7. On February 24, 2022, the Court, having received no objections, and after notice and hearing, entered an Order approving the Disclosure Statement and the adequacy thereof. *See* Dkt. No. 92.

8. On March 28, 2022, Pangea filed its Objection to Confirmation of Debtor's First Amended Plan of Reorganization. Dkt. No. 108.

9. As of the date of this filing, no objections to the Plan have been filed or received other than Pangea's. The deadline for filing objections to the Plan was March 28, 2022. *See* Dkt. No. 92.

10. The Debtor filed its Ballot Summary Report on April 1, 2022, in accordance with the Court's directive for same. *See* Dkt. No. 109.

11. On March 24, 2022, Debtor filed Applications to Employ both Ten-X, LLC ("**Ten-X**") as auctioneer (Dkt. No. 96) and Marcus & Millichap ("**M&M**")as broker (Dkt. No. 99) to conduct a public auction for the sale of the Property. On the same day, Debtor also filed its Motion for Order to (1) Authorize and Schedule an Auction to Solicit Bids for the Sale of Debtor's Real Property, (2) Approve Auction and Bid Procedures, and (3) Schedule a Hearing to Consider Approval of the Sale (the "**Auction Motion**"; Dkt. No. 102), and a Motion to Approve Sale of Estate Property Free and Clear of All Liens, Claims, and Encumbrances by Auction Pursuant to 11 U.S.C. § 363(b) and (f) (the "**363 Sale Motion**"; Dkt. No. 105).

12. On April 6, 2022, the Debtor and Pangea jointly filed a Stipulation Resolving Pangea's Objection to Plan of Reorganization and Motion to Dismiss. Dkt. No. 116. The Court subsequently entered an order on April 7th (the "**April 7th Order**") directing the Debtor to file the instant Motion to Approve to include details clarifying

and explaining six (6) specified issues concerning the stipulation. *See* Dkt. No. 119. This Motion is filed pursuant to the Court's directive in the April 7th Order.

## II.  REQUESTED RELIEF

13. Through this Motion, the Debtor seeks to (1) clarify and answer questions the Court has concerning the Stipulation and (2) obtain Court approval of its Stipulation with Pangea pursuant to Fed. R. Civ. P. 9019(a).

14. The material terms of the Stipulation, which simply defines the first steps required to implement the Plan as proposed, are set forth below and in **Exhibit A** hereto:

   a. <u>Consent to Auction and Employment Applications.</u> Pangea consents to the Debtor's Applications to employ Ten-X and M&M as Auctioneer and Broker, respectively. It has also agreed to allow the Auction (as defined and set forth in the Auction Motion) to proceed as set forth in the Auction and Bid Procedures submitted with the Auction Motion, as modified by the terms of the Stipulation, on or before June 6, 2022.

   b. <u>Minimum Auction Sale Price.</u> Pangea's consent to the Auction is conditioned on the Debtor obtaining a minimum offer of $7,900,000.00 for the purchase the Property at the Auction.

   c. <u>Net Proceeds.</u> Provided the Auction results in a sale of the Property for at least $7,900,000.00, the Debtor has agreed to deliver the "**Net Proceeds**" (*i.e.* the gross sales price less all outstanding real estate taxes – delinquent taxes for 2018, 2019 and 2020, and those owed for 2021 – and other customary closing costs, not to exceed 4% of the gross sales price) to Pangea in an amount not less than $7,200,000.00 on or before June 30, 2022. In the event that the Net Proceeds exceed the $7,200,000 to be delivered to Pangea, the Debtor (and thus, the Estate) shall be entitled to keep such proceeds to be distributed as set forth below. As consideration for same, the Debtor has agreed to provide Pangea with monthly historical financial information from November 2020 through the present date, on or before June 30, 2022, and has agreed to pay Pangea 50% of any net profits generated from any event or operations at the Property until such time as the Debtor's ownership of the Property ceases, with each monthly payment due on the 30th of each month.

   d. <u>Releases</u>. Provided that Pangea receives at least $7,200,000 in Net Proceeds from the Auction sale of the Property, the Pangea Outstanding Obligation will be deemed fully satisfied and Pangea will release the Debtor, co-borrower, Nativ Hotel Denver, LLC ("Nativ") and the personal

  guarantors, all security interests securing the same, and any further liability stemming therefrom.

e. <u>Dismissal if Minimum Sale Price Not Met</u>. If the Auction does not generate a minimum offer of at least $7,900,000.00, or result in Net Proceeds of at least $7,200,000.00 to be paid to Pangea on or before June 30, 2022, then the Debtor and Pangea have agreed that the Bankruptcy Case will be dismissed and Pangea shall be free to commence foreclosure sale through the public trustee, UCC sale of the personal property and any other legal or equitable remedy to collect against the Debtor, Nativ, the personal guarantors, and any other collateral securing the debt. In such event, the Debtor, Nativ and personal guarantors reserve all of their respective rights, claims and defenses with respect to any deficiency, if any, following the foreclosure sale.

*See* **Exhibit A.**

15. Pursuant to the Court's April 7th Order, the Debtor responds to the six (6) questions or issues concerning the Stipulation:

a. <u>First</u>, if the Auction results in a sale of the Property for at least $7,900,000.00, and if the Debtor pays Pangea not less than $7,200,000.00 by June 30, 2022 from the Net Proceeds, then the Debtor will either seek an order from the Court confirming its Plan or it will seek a dismissal of the Bankruptcy Case, depending on the extent of the excess proceeds remaining after paying Pangea. If, for instance, the remaining proceeds after paying Pangea are relatively minimal and the cost of prosecuting confirmation of the Plan and paying associated filing fees is not economical, the Debtor intends to move to dismiss the bankruptcy. Irrespective of whether or not the Debtor seeks confirmation of the Plan or dismissal, it plans to use the excess proceeds to first pay approved administrative claims and then pay unsecured creditors as set forth in the Plan. Importantly, the filed and pending Plan contemplates essentially what the Stipulation calls for, with the exception that the Stipulation sets for new bid targets and reserves for the proposed Auction. Indeed, the Plan provides for the eventuality that a high value achieved at the auction would provide funds to pay unsecured creditors.

b. <u>Second</u>, if the Net Proceeds from the Auction are in excess of the $7,200,000 minimum which Pangea will accept in satisfaction of its Outstanding Obligation, then the Debtor intends to use those funds to first pay administrative priority claims and then pay unsecured creditors in a pro-rata amount equal to their respective claims. If the Net Proceeds from the Auction (after paying Pangea not less than $7,200,000.00 and

4

after paying administrative claims) are sufficient to pay all unsecured creditors in full, the Debtor intends to do so.

c. <u>Third</u>, if the Auction generates insufficient proceeds to pay unsecured creditors in full after paying administrative claims, the Debtor proposes to pay the unsecured creditors in accordance with their pro-rata share, as set forth in the Plan.

d. <u>Fourth</u>, under the terms of the Stipulation, Pangea is only entitled to receive more than $7,200,000.00 of the Net Proceeds from the Debtor if any events or operations are conducted at the Property between the date of the Stipulation and the date that the Debtor ceases to own the Property, and such events generate net profits. In such case, the Debtor has agreed to pay 50% of such net profits of the operations to Pangea.

e. <u>Fifth,</u> the differential between the minimum Auction price ($7,900,000.00) and the minimum Net Proceeds to be paid to Pangea from the Auction sale ($7,200,000.00) accounts for the unpaid real estate tax obligations that the Debtor owes for the years 2018, 2019, 2020 and 2021 in addition to the amounts due for 2022, plus closing costs (*i.e.,* M&M 3% commission, costs of closing, and Debtor's attorney's fees), which amount is anticipated not to exceed 4% of the gross sales price.

f. <u>Lastly</u>, under the Stipulation and as additional consideration, the Debtor has agreed to release any avoidance claims it may have against Pangea, including preference claims for amounts that the Debtor paid Pangea pre-petition pursuant to five (5) forbearance agreements, totaling $301,050.00, which amounts were not applied to the Pangea loan balance. Even if, as Pangea would likely argue, the payments were merely forbearance payments and thus they had no obligation to apply them to the outstanding loan balance, Pangea's claimed Outstanding Obligation less the forbearance payments made would result in a deficiency of $1 million (rather than an excess) after Pangea receives $7,200,000 of the Net Proceeds.

**A.   The Stipulation is in the Best Interest of the Debtor's Bankruptcy Estate and its Creditors.**

16.   "To minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)). In assessing a request to approve a compromise under Rule 9019(a), "a court's general charge is 'to determine whether the settlement is fair and equitable and in the best interests of the estate.'" *Rich Dad Operating Co., LLC v. Zubrod (In re: Rich Global, LLC),* 652 F. App'x 625, 631 (10th Cir. 2016) (quoting *Official Comm.*

*of Unsecured Creditors v. W. Pac. Airlines, Inc. (In re W. Pac. Airlines, Inc.),* 219 B.R. 575, 579 (D. Colo. 1998). Although the Court has discretion to approve a compromise under Rule 9019(a), *see Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971, 978 (D. Colo. 1989)), its decision "must be an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann,* 881 F.2d 890, 892 (10th Cir. 1989).

17. In considering whether to approve a settlement agreement such as the Stipulation at issue herein, bankruptcy courts consider four primary factors: "the probable success of the underlying litigation on the merits, the possible difficulty in collection of a judgment, the complexity and expense of the litigation, and the interests of creditors in deference to their reasonable views." *Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.),* 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997); *In re: Rich Global, LLC,* 652 F. App'x at 631; *In re Kaiser Steel Corp.*, 105 B.R. at 976-77. In addition to those factors, the Court "must carefully weigh the value of the settled claim against the value to the estate by the settlement." *In re The Hermitage Inn, Inc.,* 66 B.R. 71, 72 (Bankr. D. Colo. 1986). "[S]ome deference to the business judgment" of a debtor-in-possession is also appropriate where a proposed settlement otherwise is fair and equitable to the estate. *In re OptInRealBig.com, LLC*, 345 B.R. 277, 291 (Bankr. D. Colo. 2006).

18. The Debtor submits that the proposed Stipulation is fair, reasonable, and in the best interest of the Estate and its creditors. The proposed Stipulation resolves Pangea's Motion to Dismiss and its Objection to confirmation of the Plan, as amended. It likewise resolves Pangea's claim in this Estate, to which the Debtor would have objected, absent the Stipulation, and which ultimately would have resulted the Debtor and therefore the Estate incurring costs and fees to litigate. It therefore avoids the substantial expense and delay associated both with claim objections and a contested confirmation hearings. The Stipulation therefore allows both the Debtor and Pangea to conserve resources and likewise allows the Debtor some breathing room to conduct an auction of the Property and attempt to monetize it for the benefit of both the Estate and Pangea, in addition to all of the Debtor's other creditors. The Stipulation avoids the expense of further litigation and resolves potential defenses to the Pangea Claim without additional cost or risk to the Estate.

### III. CONCLUSION

WHEREFORE, Debtor-in-Possession, KDA Properties, LLC respectfully requests that the Court enter an Order approving the Stipulation, and for such other relief as the Court deems appropriate under the circumstances.

Dated: April 11, 2022

Respectfully submitted,

By: *s/ Rachel A. Sternlieb*
Patrick D. Vellone, 15284
Jeffrey A. Weinman, #7605
Rachel A. Sternlieb, # 51404
ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.
1600 Stout Street, Suite 1900
Denver, CO 80202
Telephone: (303) 534-4499
pvellone@allen-vellone.com
jweinman@allen-vellone.com
rsternlieb@allen-vellone.com

**COUNSEL FOR DEBTOR-IN-POSSESSION**